***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Harris with minor modifications.
 *********** ISSUES
1. Whether Plaintiff's back condition is compensable?
2. To what compensation, if any, is Plaintiff entitled? *Page 2 
3. Whether TTD compensation to Plaintiff should be reinstated following entry of the August 1, 2008 Administrative Decision and Order approving Defendants' Form 24 Application?
4. Whether Defendants should pay for the back surgery Plaintiff underwent on June 13, 2008?
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Commission has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. This case is subject to the North Carolina Workers' Compensation Act, and the parties are bound by and subject to the North Carolina Workers' Compensation Act.
4. An employment relationship existed between Plaintiff and Defendant-Employer as of November 22, 2006.
5. The Phoenix Insurance Company was the insurer for Defendant-Employer at the time of the injury by accident on November 22, 2006 and all other times relevant to this claim.
6. Plaintiff's average weekly wage is $1,075.32, with a resulting compensation rate of $716.92.
7. Plaintiff claims injury to her right leg, left leg, back, left shoulder and left arm. The date of the injury by accident is November 22, 2006. The date Plaintiff's disability began *Page 3 
was November 22, 2006. A Form 60 was filed by Defendants on March 9, 2007 for the right knee. Defendants paid compensation and medical compensation for Plaintiff's claim in regard to injury to her right leg and right knee, and subsequently, to her left arm and left shoulder. Plaintiff filed an Amended Form 18 on May 1, 2007 and set forth injury to her right leg, left leg, back, left shoulder and left arm. Plaintiff filed a Form 33 Request for Hearing in regard to the compensability of her back condition on February 25, 2008. On June 17, 2008, Defendants filed a Form 24 Application. An informal hearing was held on July 22, 2008, and thereafter Special Deputy Commissioner Christopher B. Rawls issued an Administrative Decision and Order dated August 1, 2008, which approved Defendants' Form 24 Application effective July 7, 2008. Plaintiff filed a supplemental Form 33 on August 14, 2008 appealing the Administrative Decision and Order. Plaintiff received ongoing TTD compensation at the weekly compensation rate of $716.92 from the date of injury up to the approval of Defendants' Form 24 Application.
 *********** EXHIBITS
The following documents were accepted into evidence by the Deputy Commissioner as stipulated exhibits:
 • Exhibit 1: Executed Pre-Trial Agreement
 • Exhibit 2: Industrial Commission Forms
 • Exhibit 3: Plaintiff's medical records
Transcripts of the depositions of the following were also received by the Deputy Commissioner post-hearing:
 • Dr. C.S. Whitman
 • Dr. David L. Spivey *Page 4 
 • Dr. David Janeway
 • Dr. William R. Brown, Jr.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the hearing before the Deputy Commissioner, Plaintiff was 64 years of age. She earned an LPN license in 1966 and an associate's degree in nursing in 1987. Plaintiff's only work since 1987 has been in nursing.
2. Plaintiff had surgery for a bulging disk in her back in 1980. She had no more problems with her back after that until her date of injury in this claim.
3. Plaintiff started with Defendant-Employer in 2002. Defendant-Employer operated as a separate entity within Forsyth Medical Center, and Plaintiff worked as a staff registered nurse there. Her job involved direct patient care in complex medical rehabilitation cases. Plaintiff's work was rather strenuous, as it involved taking care of severely injured patients, some with paralysis.
4. On November 22, 2006, Plaintiff slipped and fell on a freshly waxed floor. Her legs went up in the air, and Plaintiff landed on her backside with her right leg up under her. She heard a pop in her right leg and was in immediate, excruciating pain in her right leg, right hip and back.
5. Plaintiff got immediate medical attention in the hospital's emergency room. She had pain in her right hip and leg upon weight-bearing, and her physical examination revealed severe vertebral point tenderness over the lower lumbar spine and soft tissue tenderness in the *Page 5 
right lower lumbar area. X-rays showed lumbar degenerative disc disease. She was diagnosed with "Acute back pain: lumbar strain. Contusion right hip and right thigh; Sprained right knee; Fall."
6. Plaintiff has not worked at all since her fall on November 22, 2006.
7. Plaintiff filled out her own Form 18 on December 4, 2006 and noted therein that her right leg, hip and low back hurt at that time.
8. Defendants sent Plaintiff to Dr. Whitman, an orthopedist. Dr. Whitman's nurse practitioner, Michael Beres, first evaluated Plaintiff on December 6, 2006. This initial evaluation concentrated on Plaintiff's right hip, leg, knee and calf pain. Mr. Beres' impression included right knee pain, medial distal right thigh pain, likely myofascial, and severe right calf pain.
9. Upon Mr. Beres' referral, Plaintiff participated in physical therapy for her right thigh, knee and calf pain.
10. As a result of using crutches for her right leg condition, Plaintiff developed adhesive capsulitis, or "frozen shoulder," in her left shoulder.
11. Dr. Whitman noted on April 12, 2007 that Plaintiff might have complex regional pain syndrome in her right leg.
12. Plaintiff underwent surgery with Dr. Whitman on June 20, 2007. The diagnosis at that time was adhesive capsulitis in both the left shoulder and right knee, as well as complex regional pain syndrome in the right leg. The surgery included manipulation of the right knee and left shoulder under anesthesia in order to break up the adhesions, as well as a sympathetic block for the CRPS symptoms. *Page 6 
13. Following the surgery, Plaintiff had good resolution of her left shoulder symptoms. However, she continued to have swelling, pain, numbness and tingling in her right leg. On September 11, 2007, Dr. Whitman noted that Plaintiff should be referred to a CRPS specialist.
14. On October 3, 2007, Plaintiff presented to Dr. Spivey, a pain management physician, specifically for evaluation and treatment of CRPS. She described right leg pain that was throbbing, stabbing, cramping, burning, aching and exhausting. Dr. Spivey diagnosed CRPS of the right lower extremity with persistent significant pain and signs, and he recommended a series of right lumbar sympathetic plexus blocks.
15. Plaintiff thereafter underwent two blocks. On October 31, 2007, Plaintiff complained of pain in her left leg and foot, and Dr. Spivey recommended a lumbosacral MRI.
16. On November 7, 2007, Dr. Spivey noted that the MRI showed multi-level lumbar degenerative disc disease. That day, Plaintiff also reported that her right leg was giving way and that she had increasing pain in her left leg. Dr. Spivey became concerned that Plaintiff's pain was really radicular in nature, and he recommended an EMG study.
17. The EMG study done on November 26, 2007 showed irritability in the right L5 nerve root. This result led Dr. Spivey to conclude that Plaintiff's CRPS in her right leg had actually masked radicular pain. Her radicular pain became a greater concern to Dr. Spivey than the CRPS.
18. Dr. Whitman evaluated Plaintiff again on December 27, 2007, and she continued to complain of pain, discomfort and dysfunction in her right leg. Dr. Whitman agreed with Dr. Spivey that her right leg problems might be more related to radicular symptoms for her low back *Page 7 
than to CRPS. He recommended a neurosurgical consultation with Dr. Brown, and Dr. Spivey concurred with this recommendation.
19. In the meantime, Defendants sent Plaintiff for an independent medical examination with Dr. Janeway on February 12, 2008. Dr. Janeway evaluated and examined only Plaintiff's right knee and diagnosed her with an aggravation of a pre-existing degenerative meniscus condition and some adhesive capsulitis, both conditions related to her fall. He concluded that her right knee was at maximum medical improvement with a five percent PPI rating, and he assigned no restrictions with regard to her right knee.
20. Plaintiff presented to Dr. Brown, a neurosurgeon, on May 1, 2008 for her low back symptoms, including radicular right leg symptoms. Plaintiff had a positive straight leg raise on the right, which was indicative of nerve root irritation on the right side and consistent with her pain complaints. Dr. Brown diagnosed back pain secondary to lumbar degenerative disc disease at L4-5 and L5-S1 and leg pain secondary to lumbar stenosis at L4-5 and L5-S1, and he felt that Plaintiff was a surgical candidate.
21. On May 15, 2008, Plaintiff returned to Dr. Whitman, who wrote her completely out of work because of her low back and right leg symptoms.
22. Plaintiff underwent back surgery with Dr. Brown on June 13, 2008. The procedure was a decompressive lumbar laminectomy at L4-5 and L5-S1, with two-level posterior lumbar interbody fusion and placement of instrumentation at those levels. Dr. Brown wrote Plaintiff completely out of work pending her recuperation from surgery.
23. Defendants have denied the compensability of Plaintiff's low back condition and denied payment for the surgery. *Page 8 
24. Upon request by the nurse case manager assigned by Defendant-Carrier, on July 7, 2008, without evaluating Plaintiff, Dr. Whitman wrote that Plaintiff was at MMI for her left shoulder and right knee and could return to work without restrictions as to those conditions. He assigned a five percent PPI rating for her right knee.
25. Special Deputy Commissioner Rawls' August 1, 2008 Order specifically noted that, while Plaintiff contended during the informal hearing that she had a back injury, Defendants had denied that aspect of this claim, and Plaintiff would have to pursue the back claim through the full hearing process.
26. Plaintiff continued to follow with Dr. Brown post-surgery. She reported some continued low back pain, but her leg pain was much improved. As of his deposition on February 5, 2009, Dr. Brown did not believe that Plaintiff had reached MMI for her low back condition, and he believed it would likely be a year to a year-and-a-half from the surgery before Plaintiff would reach MMI. As of his deposition, Dr. Brown did not believe that Plaintiff was physically able to work because of her ongoing low back condition and recovery from surgery, and he intended to address her work status when she reached MMI.
27. As of the hearing before the Deputy Commissioner, Plaintiff's right foot was sticking somewhat out to the side, and her right leg was atrophied. She was using a cane on her right. She did not feel that she could do her former nursing job with her right leg in that condition. She was continuing to receive pain management treatment with Dr. Spivey.
28. Dr. Whitman testified that he could not connect the November 22, 2006 accident and Plaintiff's June 13, 2008 back surgery. He appeared to base this opinion on his not being aware of Plaintiff complaining of any symptoms suggestive of low back problems until September 11, 2007. However, he did allow that Plaintiff had trouble, during her visits with *Page 9 
him, describing her symptoms. He also allowed that, in retrospect, the right calf and thigh pain that Plaintiff complained of to his nurse practitioner in December 2006, as well as her trouble with weight-bearing on the right in physical therapy at about that time, could have suggested radiculopathy at that time. He also allowed that Plaintiff's right leg symptoms during his treatment of her, particularly her inability actively to dorsiflex her right foot in a standing position, could have indicated nerve root irritation. Dr. Whitman also testified that he could never, in any case, say that changes shown on imaging results were directly related to a specific traumatic event.
29. Dr. Whitman deferred to Dr. Brown with regard to Plaintiff's low back condition as of Dr. Brown's assumption of her treatment and following.
30. As Dr. Brown testified, within a reasonable degree of medical certainty, the November 22, 2006 fall aggravated Plaintiff's pre-existing lumbar degenerative disk disease, which brought her to such a pain level in her low back and legs that she had to consider surgery. As he further testified, Plaintiff's continuing complaints of low back symptoms are related to her fall. Dr. Brown based his causation opinion on Plaintiff's history of not having significant back and leg pain before the fall. If Plaintiff did not complain of low back symptoms for about one year after the fall, that would make Dr. Brown "suspicious" and would affect his opinion, but he agreed that Plaintiff's presentation with acute back pain (diagnosed as a lumbar strain) in the emergency room on the date of the accident was consistent with his causation opinion that Plaintiff sustained an aggravation of her pre-existing lumbar condition on that date. As Dr. Brown noted, it is difficult, clinically, to tell the difference between a lumbar strain and an aggravation of degenerative disk disease. *Page 10 
31. The Full Commission accords more weight to the causation testimony of Dr. Brown than to that of Dr. Whitman. Dr. Whitman discounted Plaintiff's ongoing complaints of pain in her right leg from the beginning of her treatment, as well as her emergency room diagnosis, in forming his opinion. Dr. Brown's opinion has more merit, given the totality of Plaintiff's history and treatment.
32. The medical treatment, including surgery, that Drs. Spivey, Whitman and Brown have rendered for Plaintiff's low back and/or leg symptoms has been reasonably required to effect a cure, provide relief and/or lessen the period of Plaintiff's disability. Further medical treatment for Plaintiff's right leg, right knee, left shoulder and/or low back condition(s) is reasonably required to effect a cure, provide relief and/or lessen the period of Plaintiff's disability.
33. The November 22, 2006 fall resulted in four major medical conditions for Plaintiff: (1) CRPS in her right leg; (2) aggravation of degenerative changes in the meniscus of her right knee; (3) adhesive capsulitis of her left shoulder; and (4) aggravation of degenerative disc disease in her low back with radicular pain into her legs. The right knee meniscus condition and left shoulder condition appear to have reached MMI by July 7, 2008, but Plaintiff has continued to suffer pain and disability related to her right leg and low back conditions thereafter.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW *Page 11 
1. Plaintiff has shown that she sustained a compensable aggravation of her pre-existing low back condition in her injury by accident on November 22, 2006, and her low back condition is thus compensable. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has shown that she has been and remains totally disabled because of her low back condition since, at the latest, May 15, 2008, because she has produced medical evidence that she has been physically unable to work in any employment because of her low back condition since that date. As such, Plaintiff is entitled to TTD compensation from that date through the present and ongoing. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to have her TTD compensation reinstated from the date of Defendants' last payment of TTD compensation following the entry of the August 1, 2008 Administrative Decision and Order approving the Form 24 Application. Id.
4. Plaintiff is entitled to have Defendants pay for the medical treatment she has heretofore received for her compensable low back condition with or at the direction of Drs. Spivey, Whitman and/or Brown, including but not limited to diagnostic testing, surgery (including the June 13, 2008 surgery), prescriptions, physical therapy and mileage. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
5. Defendants are also responsible, to any extent they have not already done so, for paying for the medical treatment that Plaintiff has heretofore received for her compensable right leg, right knee and left shoulder conditions. Id.
6. Plaintiff is also entitled to have Defendants authorize and pay for further medical treatment for her compensable right leg, right knee, left shoulder and low back conditions, including but not limited to diagnostic testing, surgery, prescriptions, physical therapy and mileage. Id. *Page 12 
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee provision below, Defendants shall pay to Plaintiff, in a lump sum, back TTD compensation in the amount of $716.92 per week from the date of their last payment of TTD compensation through the present. Defendants shall also pay ongoing weekly TTD compensation to Plaintiff, in the amount of $716.92 per week, until Plaintiff returns to work or further Order of the Commission.
2. As Plaintiff's attorney's fee, Defendants shall deduct 25 percent of the lump sum payable per Paragraph 1 above and pay such portion directly to Plaintiff's counsel. Defendants shall also make every fourth ongoing payment payable directly to Plaintiff's counsel.
3. Defendants shall pay for the medical treatment Plaintiff has heretofore received for her compensable low back condition with or at the direction of Drs. Spivey, Whitman and/or Brown, including but not limited to diagnostic testing, surgery (including the June 13, 2008 surgery), prescriptions, physical therapy and mileage. To the extent that Plaintiff and/or any third-party payor has paid for such treatment, Defendants shall reimburse such payor in full.
4. Defendants shall, to any extent they have not already done so, pay for the medical treatment that Plaintiff has heretofore received for her compensable right leg, right knee and left shoulder conditions.
5. Dr. Brown is hereby designated as Plaintiff's treating physician for her compensable low back condition, and Defendants shall subject to the limitations period of N.C. Gen. Stat. § 97-25.1, authorize and pay for the treatment that he recommends for said condition, *Page 13 
including but not limited to diagnostic testing, surgery, prescriptions, physical therapy, referrals and mileage.
6. Dr. Spivey is hereby designated as Plaintiff's treating physician for her compensable pain management needs, and Defendants shall, subject to the limitations period of N.C. Gen. Stat. § 97-25.1, authorize and pay for the treatment that he recommends for Plaintiff's compensable condition(s), including but not limited to diagnostic testing, surgery, prescriptions, physical therapy, referrals and mileage.
7. Defendants shall also authorize and pay for further treatment for Plaintiff's compensable right leg, right knee and left shoulder conditions, to any extent not already addressed in this Order, as is reasonably required to effect a cure, provide relief and/or lessen the period of Plaintiff's disability, subject to the limitations period of N.C. Gen. Stat. § 97-25.1.
8. Defendants shall pay the costs. As part of their costs, if they have not done so already, Defendants shall pay an expert witness fee to Dr. Whitman in the amount of $826.50 or the amount actually billed, whichever is less. It is noted that the Deputy Commissioner already set expert witness fees for Drs. Janeway, Brown and Spivey via Orders filed on February 23, 2009; March 9, 2009, and; March 20, 2009, respectively.
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ BERNADINE S. BALLANCE COMMISSIONER *Page 14 
 S/_____________ STACI T. MEYER COMMISSIONER *Page 1